210 N.J. Super. 17 (1986)
509 A.2d 192
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARLOS RAFAEL SAINZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 15, 1986.
Decided April 7, 1986.
*19 Before Judges FRITZ, BRODY and BAIME.
Karcher, McDonnell & Rainone, for appellant (Louis N. Rainone, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, for respondent (Jeffrey L. Menkin, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D
A search of defendant's home pursuant to a warrant uncovered 108.6 grams of cocaine of which 38 grams were the pure free base. He pled guilty to possession with intent to distribute the cocaine, a crime punishable by imprisonment "for up to life, a fine of not more than $25,000.00, or both." N.J.S.A. 24:21-19b(2). *20 Pursuant to a plea agreement, the trial judge sentenced defendant to 10 years in prison, three to be served before parole eligibility. The points raised require us to consider whether certain sentencing guidelines of the Code of Criminal Justice (the Code) are applicable to a sentence imposed for a violation of the Controlled Dangerous Substances Act (the CDS Act) and to consider the appropriate appellate standard for reviewing a negotiated sentence.

I.
Before reaching the sentencing issues, we address defendant's challenge to the search warrant. A law division judge had issued the warrant on the basis of statements in a police officer's affidavit. Defendant contends that the contents of that affidavit do not establish probable cause.[1]
The officer relied heavily on the statements of a person he described as "[a] known citizen informant whose reliability need not be established...." The allusion is to our holding in State v. Kurland, 130 N.J. Super. 110, 114-115 (App.Div. 1974), where we said:
Probable cause for issuance of a search warrant may rest on reasonable trustworthy information from an informant. [Citation omitted.] When information is provided by a cooperative citizen, or an informant not from the criminal milieu, there is less need for establishing credibility of the informant. An ordinary citizen who reports a crime has been committed in his presence stands on a much different ground than a police informer. He is a witness to a crime who acts with an intent to aid the police in law enforcement because of his concern for society. He does not expect any gain or concession in exchange for his information. A citizen-informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding *21 proof of his reliability by pointing to previous accurate information which he had supplied. We hold that when information is provided by a citizen-informer his prior reliability need not be established as a prerequisite for issuance of a search warrant.
Defendant correctly observes that the officer does not recite any circumstances to support his conclusion that the informant was a cooperative citizen who expected neither gain nor concession in exchange for his information. Indeed, there is an inference to the contrary. The officer stated in his affidavit that the informant "turned over to me a quantity of white powdery substance" which the informant claimed he had "obtained" from defendant. The substance contained cocaine. The officer did not state whether the informant lawfully possessed the cocaine. If he did not, the informant would have been beholden to the police and his credibility could not be taken for granted.
However, the informant provided the officer with a detailed description of defendant's CDS activity, which was partly corroborated by the officer's own investigation. The officer observed at defendant's home an automobile that, according to the informant, defendant used to purchase cocaine in Florida. Further investigation revealed that the automobile was registered in Florida to someone other than defendant. Soon after the informant had told the officer that defendant was about to go to Florida in the automobile to purchase cocaine, the officer observed that the automobile was not at defendant's home for several days.
Even when an informant's inherent reliability has not been established in a search warrant affidavit, "the affidavit may nevertheless be sufficient if elsewhere in the application there is enough to `permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.'" State v. Ebron, 61 N.J. 207, 212 (1972) (quoting Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969)). The United States Supreme Court recently emphasized that when an informant's *22 statement standing alone would be insufficient, the "totality of circumstances" may be considered to establish probable cause. Illinois v. Gates, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332-2333, 76 L.Ed.2d 527, 548, reh. den., 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983).
An issuing judge must give weight to the expert judgment of an experienced police officer. State v. Kasabucki, 52 N.J. 110, 117 (1968). In his affidavit the officer described his extensive experience as an investigator of illegal CDS activity. He considered it significant that defendant kept at his home in New Jersey an automobile registered to someone else in Florida, a known source of cocaine. The informant's credibility was also enhanced by the absence of the automobile during the period when he predicted that defendant would be taking it to Florida to purchase cocaine. We stated in a similar case, "Thus the affidavit in toto detailed sufficient underlying facts and circumstances to establish probable cause" even though the informant's statement standing alone would not. State v. Medero, 95 N.J. Super. 209, 214 (App.Div. 1967). Also, "[o]nce the judge has made a finding of probable cause on the proof submitted and issued the search warrant, a reviewing court, especially a trial court, should pay substantial deference to his determination." Kasabucki, 52 N.J. at 117. The trial judge here did not err when he denied defendant's motion to suppress.

II.
The indictment in this case charged defendant and his wife with possession of one or more ounces of cocaine including "at least 3.5 grams of the pure free base" (N.J.S.A. 24:21-20a(2)) and possession of that cocaine with the intent to distribute it (N.J.S.A. 24:21-19b(2)). The State undertook in the plea agreement to move for dismissal of both counts against defendant's wife and dismissal of the simple possession count against defendant. The State also agreed to recommend a maximum *23 custodial sentence of 10 years with no recommendation, one way or the other, respecting a period of parole ineligibility.
The judge gave the following reasons for sentencing defendant to a prison term of 10 years with three years of parole ineligibility:
So, this poison goes on and on throughout our community, doing damage to the fabric of our community, its people, its families.
Because of those things that have been pointed out to this Court relative to the fact that you do not have a prior record this Court has resolved to accept this plea agreement, but nothing less than the plea agreement.
....
This defendant must be punished for what he did, and his punishment not only be a deterrence to him, but to other persons.
The judge made no other findings regarding aggravating and mitigating factors and did not articulate how he weighed those factors to arrive at either the term of imprisonment or the period of parole ineligibility. We recently underlined the necessity for making these findings when sentencing under the Code. State v. Martelli, 201 N.J. Super. 378, 383-384 (App.Div. 1985).
The State argues, in effect, that the Code does not require a judge to weigh aggravating and mitigating factors when imposing a CDS sentence because of the broad range of unstructured sentences available under the CDS Act in contrast to the limited range of structured sentences available under the Code. The State also asserts that a plea-negotiated sentence is presumed to be reasonable and should therefore not be disturbed.

A.
N.J.S.A. 24:21-19b(2) subjects a defendant to a maximum prison term of "up to life" when he possessed one or more ounces of cocaine that "included at least 3.5 grams of the pure free base." Unlike crimes under the Code, crimes under the CDS Act are not classified by degree and do not carry presumptive sentences as a starting point for arriving at an appropriate sentence. Nevertheless, the Code expressly requires that a sentence for violating the CDS Act be imposed in a manner that conforms with the sentencing subtitle of the Code:

*24 A sentence imposed upon violation of the "New Jersey Controlled Dangerous Substances Act" shall be governed by this subtitle but shall be subject to the maximum sentence authorized for the relevant offense under said act.... [N.J.S.A. 2C:43-1(b)]
We have held that all sentencing provisions of the Code apply to CDS Act offenses except provisions related to the degree of a crime. State v. Sobel, 183 N.J. Super. 473, 478-479 (App.Div. 1982) (N.J.S.A. 2C:44-1(e) presumption of noncustodial sentence for certain first offenders applies to sentences imposed for violation of the CDS Act).
Aggravating and mitigating factors, N.J.S.A. 2C:44-1(a) and (b), must be identified and weighed before imposing a term of imprisonment for a violation of the CDS Act. Indeed, those factors are even more important when sentencing for a CDS Act offense than when sentencing for a Code offense because of the unavailability of the statutory sentencing ranges and presumptive sentences governing sentences for Code offenses. Weighing aggravating and mitigating factors provides a critical guideline for arriving at an appropriate sentence for a CDS Act offense. In order to reduce unacceptable disparity, sentences imposed for CDS Act offenses may not be left to the judge's unarticulated "gut" reaction or to a mere recital that CDS is destroying our society. The reasons for a sentence must explain why an offender is placed on probation, or why he is sentenced to a prison term of years or life for the same statutory crime.
"Where an essential element of a crime is a specific fact ... that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose a period of parole ineligibility." State v. Link, 197 N.J. Super. 615, 620 (App.Div. 1984). That sentencing guideline was expressly approved in State v. Yarbough, 100 N.J. 627, 645-646 (1985). We pointed out in Link, however, that the guideline does not apply where an essential element of a crime is not a specific fact, but a general fact that encompasses "a variety of alternative fact patterns each of which is *25 aggravating to a different degree." Link at 620-621. In such a case the sentencing judge must consider "[t]he nature and circumstances of the offense, and the role of the actor therein" as required by N.J.S.A. 2C:44-1(a)(1), one of the statutory aggravating factors.
That is the case here where the CDS Act provides that it is a crime for a person "[t]o ... have under his control with intent to ... distribute ... [cocaine] ... in a quantity of one ounce or more ... provided that there are included at least 3.5 grams of the pure free base...." N.J.S.A. 24:21-19b(2). The elements of the crime are present whether the intent is merely to share cocaine casually with a friend or to control a widespread network of illicit distribution and sale. A proper sentence cannot be imposed unless the judge identifies and weighs as aggravating factors the nature and circumstances of the offense and the defendant's role therein.
If under a plea agreement the prosecutor is to recommend a heavy sentence, he must see to it that the defendant acknowledges having had a role in the crime that will support the sentence. When accepting a guilty plea to a Code crime, a judge can be somewhat more indulgent of a defendant's natural reluctance to admit the details of his role because admission of the bare essentials of the crime is sufficient to expose the defendant to the presumptive sentence. A judge may not, however, be so indulgent when accepting a plea to a CDS Act crime because there is no presumptive sentence. If the defendant so minimizes his role in the crime that it will not support the contemplated sentence, the judge should not accept the plea.
Here, defendant's factual basis for his plea minimized his role in the crime. He stated that he was merely holding the cocaine in his home for someone else who was the seller. In contrast to defendant's self-described minimal role, the evidence upon which the warrant issued was that defendant himself sold cocaine from his home and that he himself drove to Florida to *26 restock his supply. When the warrant was executed at his home, police found cocaine, scales and plastic bags in his attic, cocaine in a children's room on the second floor and cocaine under a false bottom of a deodorant can in his living room.
In sum, when sentencing a defendant for a CDS Act offense, the judge must identify and weigh aggravating and mitigating factors, including the nature and circumstances of the offense and the defendant's role. When the conviction is the result of a plea, the judge may not make findings regarding the offense and the defendant's role therein that are inconsistent with the factual basis that the defendant has given or has acknowledged.

B.
N.J.S.A. 2C:43-6(b) provides in relevant part:
As part of a sentence for any crime, where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, as set forth in subsections a. and b. of 2C:44-1, the court may fix a minimum term not to exceed ... one-half of the term set pursuant to a maximum period of incarceration for a crime set forth in any statute other than this code, during which the defendant shall not be eligible for parole; ....
A judge may impose a period of parole ineligibility pursuant to the statutory guidelines when sentencing a defendant for a CDS Act offense. Where, as here, the statute authorizes a prison sentence for a term up to life, a period of parole ineligibility enables the judge to assure an appropriate period of incarceration without resorting to an excessive term of imprisonment just to achieve the ordinary parole eligibility date that coincides with the desired minimum term. State v. Martelli, 201 N.J. Super. at 383.

III.
Finally, the State urges that we affirm this sentence in deference to its presumed reasonableness because it conforms to the terms of a plea agreement. Before adoption of the Code, a defendant could appeal a plea-negotiated sentence but the *27 appellate court would "ordinarily defer to the presumed reasonableness of a bargained sentence and not hold it to be excessive except in compelling circumstances." State v. Spinks, 66 N.J. 568, 573 (1975). In reviewing a plea-negotiated sentence the appellate court could "not only consider each and every term of the bargain, including the reduction or dismissal of charges, but should recognize that the defendant has freely agreed to the imposition of such sentence as part of the plea negotiations." Ibid. The State particularly points to the dismissal in this case of all charges against defendant's wife as evidence that the sentence was "reasonable."
When Spinks was decided, the appellate court's review function on appeals of plea-negotiated sentences was simply to determine whether the sentence was "reasonable." When reviewing sentences imposed under the Code, however, the appellate court must
(a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience. [State v. Roth, 95 N.J. 334, 364-365 (1984)]
The first two appellate review functions turn on questions of law: was the sentence within the Code guidelines and does the record support the findings of fact that the judge made in identifying the applicable guidelines. The appellate court may not relax the sentencing guidelines of the Code to benefit either a defendant or the State simply because the parties had consented to do so in their plea agreement.[2]
*28 The third appellate review function turns on a question of judgment: could the judge have reasonably arrived at the sentence upon weighing the relevant factors. While a plea agreement cannot affect the appellate court's responsibility to review matters of law that are on appeal, the fact that "the defendant has freely agreed to the imposition of such sentence as part of the plea negotiations" may properly be considered, as it was under Spinks, in determining whether the sentence was "clearly unreasonable so as to shock the judicial conscience." State v. Spinks, 66 N.J. at 573; State v. Roth, 95 N.J. at 365.
The reduction or dismissal of charges under a plea agreement, though constituting substantial consideration to a defendant, are not "aggravating" factors under the Code that may be considered in arriving at his sentence. Often a defendant's attorney earnestly implores the trial judge to accept the plea agreement because it includes the reduction and dismissal of charges, only to argue later before us that the sentence imposed pursuant to the agreement was excessive and must be vacated because the judge did not follow the guidelines of the Code as required by Roth.
When a plea-negotiated sentence cannot be sustained under the guidelines of the Code but is nevertheless reasonable because of the reduction or dismissal of charges, a prosecutor can protect the interests of the State by requiring that the defendant waive an appeal from the sentence. State v. Gibson, 68 N.J. 499 (1975). If a defendant has not agreed to waive an appeal, we will assume that the State had recommended the reductions and dismissals because of a lack of evidence or the merger of offenses, not as favors to the defendant. A defendant who has waived an appeal of his sentence may nevertheless take an appeal so long as it is timely. If the defendant appeals *29 the sentence, however, the State has the right to move promptly to vacate the sentence and have the defendant tried on the original charges. Id. at 511-512.
The sentencing judge did not follow the guidelines of the Code. The sentence is therefore vacated and the matter remanded for resentencing. In the event the trial judge determines that the plea agreement does not permit him to impose an appropriate sentence consistent with the views expressed in this opinion, he shall reject the plea agreement and reinstate the original counts of the indictment against both defendants.
FRITZ, P.J.A.D. (concurring).
I am in accord with all that Judge Brody articulately states in his opinion for this court. This concurrence includes Part III of that opinion. I supplement this only because I am persuaded that the spirit of State v. Spinks, 66 N.J. 568 (1975) should not be abandoned, but should be specifically preserved and I am not certain that the opinion for the court makes that clear.
I agree with the suggestion of the principal opinion that not all concessions from the State at plea negotiating time are gifts. I agree that in many cases the prosecutor may be well advised to go the appeal waiver route. But I think we should recognize and retain the purpose of Spinks to the fullest extent possible in negotiated plea situations. This can be done by substituting for the pre-Code presumption of reasonableness a presumption that the Code guidelines were followed, unless such a presumption is clearly contraindicated by the record. The presumption would be rebuttable, of course, as the opinion of Judge Brody clearly points out is required by the Code. As is also there pointed out, the end result would still depend on whether there was compliance with the guidelines. But as does not there appear, this would shift to the defendant, where it belongs in the negotiated plea situation (see Spinks, 66 N.J. at 573), the burden on appeal of demonstrating circumstances sufficiently compelling to justify a finding by the appellate court of guideline *30 abuse, rather than require the State to justify a sentence agreed upon by defendant.
BAIME, J.A.D. (concurring).
I am in complete accord with Judge Brody's conclusion that all of the sentencing provisions of the Code of Criminal Justice are applicable to offenders convicted under the Controlled Dangerous Substances Act other than those relating to the degree of the crime committed. N.J.S.A. 2C:43-1b. See also State v. Sobel, 183 N.J. Super. 473, 478-479 (App.Div. 1982). It is, therefore, incumbent upon a trial judge to identify and weigh the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1a and b before imposing sentence for a violation of that statutory scheme. This obligation is implicit in N.J.S.A. 2C:43-1b and, in any event, is expressly prescribed by R. 3:21-4(e). The trial judge's failure to obey that fundamental command is manifest on the record before us. I, thus, agree that we are constrained to vacate the sentence and remand for resentencing.
For me that ends the matter. In my view, it is unnecessary to decide the broader propositions in this case concerning the effect of a plea agreement on the sentencing process. I merely wish to add that the differences between the views expressed by Judges Brody and Fritz concerning the impact of a negotiated plea on the appellate review of sentences are less than meet the eye. Both agree that adoption of structured sentencing under the Code did not abrogate the holding in State v. Spinks, 66 N.J. 568, 573 (1975) "that in reviewing a bargained sentence now claimed to be excessive, an appellate court should not only consider each and every term of the [agreement], including the reduction or dismissal of charges, but should recognize that the defendant has freely agreed to the imposition of such sentence as part of the plea negotiations." Judge Brody would confine appellate consideration of the plea agreement to the third prong of the tripartite formula enunciated in State v. Roth, 95 N.J. 334, 364-365 (1984). Specifically, he would limit consideration *31 of the presumed reasonableness of the bargained sentence to a determination of whether the penalty imposed was so irrational "as to shock the judicial conscience." Id. at 365. In contrast, Judge Fritz would apply Spinks in a broader fashion by substituting a presumption that the guidelines were followed for the pre-Code presumption of reasonableness.
With all due respect, I find these differences to be largely illusory. The simple fact is that we traditionally accord substantial deference to the findings of the sentencing judge with regard to the presence or absence of aggravating and mitigating factors. The essential aim of our review is to determine whether such findings could reasonably have been reached on sufficient credible evidence present in the record. Id. at 365. Cf. State v. Johnson, 42 N.J. 146, 162 (1964). We are to examine the record in the light of the contentions advanced, but not from the point of view of how we would decide the matter if we were the court of first instance. Against this backdrop, the disagreement between Judges Brody and Fritz is more semantic than real.
More troublesome is the question of whether and to what degree a sentencing judge may consider the terms of a plea agreement in meting out the appropriate penalty. I discern little difficulty where the plea agreement is predicated upon circumstances anchored in the aggravating and mitigating factors listed in the Code. We would be myopic, however, were we to fail to recognize that many negotiated pleas are structured in accordance with interests which are highly germane to the respective parties, but wholly unrelated to the Code's sentencing guidelines. An obvious example is where the prosecutor, recognizing the weakness of his case, negotiates a plea calling for a sentence inconsistent with one or more of the presumptions set forth in the Code. The question arises as to whether the trial judge must ultimately reject the plea because the bargained sentence is unduly lenient under the Code's structure. Other examples abound.
*32 Mere recitation of these problems suggests that they should not be decided in the abstract. Historical and well-recognized institutional constraints also support this thesis. We have no roving commission to seek and destroy hypothetical errors. Therefore, I would simply vacate the sentence and remand for resentencing. The circumstances of this case plainly justify that course.
NOTES
[1] United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), reh. den., ___ U.S. ___, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984), creates a good-faith exception to the Fourth Amendment exclusionary rule whenever a judge issues a warrant on the basis of sworn statements, presented in good faith, even though on analysis the statements do not establish probable cause. Our Supreme Court is now considering whether Article I, Section 7 of the New Jersey Constitution, the counterpart to the Fourth Amendment, allows a similar exception. State v. Novembrino, 200 N.J. Super. 229, (1985), certif. granted, 101 N.J. 305 (1985).
[2] See N.J.S.A. 2C:44-1(c)(1), which provides: "A plea of guilty by a defendant or failure to so plead shall not be considered in withholding or imposing a sentence of imprisonment." See also N.J.S.A. 2C:44-7, which provides:

Any action taken by the court in imposing sentence shall be subject to review by an appellate court. The court shall specifically have the authority to review findings of fact by the sentencing court in support of its findings of aggravating and mitigating circumstances and to modify defendant's sentence upon his application where such findings are not fairly supported on the record before the trial court.