STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. WILLIAM JOHNSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 4, 1989—Decided February 15, 1989.

---

584

Before Judges PRESSLER, O'BRIEN and SCALERA.

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum*, Public Defender, attorney, *J. Michael Blake*, of counsel and on the brief).

*Joseph F. Walsh,* Assistant Prosecutor, argued the cause for respondent (*Samuel Asbell,* Camden County Prosecutor, attorney, *Joseph F. Walsh,* of counsel and on the letter brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Upon leave granted, defendant appeals from an order vacating his guilty pleas to an accusation charging him with aggravated manslaughter (*N.J.S.A.* 2C:11–4a) and possession of a weapon with a purpose to use it unlawfully against the person of another (*N.J.S.A.* 2C:39–4) because he appealed from the final judgment of conviction in violation of the plea agreement. We reverse.

On February 9, 1986, defendant was charged in a municipal complaint with murder (*N.J.S.A.* 2C:11–3). This charge exposed him to imprisonment for a term of 30 years during which he would not be eligible for parole or to a specific term of years between 30 years and life imprisonment of which he would be required to serve 30 years before being eligible for parole. Pursuant to a negotiated plea agreement, defendant waived his right to indictment and trial by jury and entered a plea of guilty to a two-count accusation. The first count charged him with aggravated manslaughter (*N.J.S.A.* 2C:11–4a), a crime of the first degree, which at the time subjected him to a maximum term of imprisonment of 20 years pursuant to *N.J.S.A.* 2C:43–6a(1),[1] and the second count charged him with possession of an automatic handgun with a purpose to use it unlawfully against the person of another (*N.J.S.A.* 2C:39–4), a crime of the second degree subjecting him to a maximum term of imprisonment of ten years pursuant to *N.J.S.A.* 2C:43–6a(2).

---

[1]*N.J.S.A.* 2C:11–4 was amended by the *L.* 1986, *c.* 172, § 1, effective December 8, 1986, to provide that upon conviction of aggravated manslaughter "a person may, notwithstanding the provisions of paragraph (1) of subsection a. of *N.J.S.* 2C:43–6, be sentenced to an ordinary term of imprisonment between 10 and 30 years."

Under the terms of the plea agreement, the State agreed to recommend an aggregate sentence of 30 years with a 15–year period of parole ineligibility. Defendant agreed to waive his right to appeal and also to waive any issue as to the merger of the charge in count two into the charge in count one. Before accepting the pleas of guilty, the trial judge satisfied himself that defendant had voluntarily waived his right to indictment and trial by jury, and that there was a factual basis for his pleas which he entered voluntarily pursuant to *R.* 3:9–2. At the time of his pleas, defendant conceded that his exposure to a term of 30 years without parole if he had been indicted by the grand jury for murder was one of the considerations that led him to enter into the plea agreement with the State. The judge explained to defendant that the potential sentence under the agreement was 30 years with a 15–year period of parole ineligibility which defendant acknowledged he understood.

At sentencing on April 23, 1986, defendant's lawyer argued that a 30–year sentence with a 15–year period of parole ineligibility "is extremely harsh and a very, very hard, hard burden to take" for "a person of this extreme youth and with no prior adult convictions." He asked the judge to consider giving a lesser sentence. The judge observed that had defendant been indicted for murder and convicted after trial, he would have faced a period of 30 years of parole ineligibility, "twice as much time as you agreed with in this negotiated sentence." The judge then recognized guidelines which he was obliged to follow in imposing a particular sentence. He referred to the presumption of incarceration and the Graves Act. The judge briefly reviewed the aggravating and mitigating factors and stated:

> The bottom line is that the plea agreement is the proper one, considering the fact that you are facing 30 years without parole, considering the fact that the prosecutor took that into consideration when he offered the plea agreement, and I concur with his decision.

The judge then sentenced defendant on count one for aggravated manslaughter to the maximum term of 20 years with a

ten-year period of parole ineligibility. Noting that defendant waived his right to argue that the second count merged into the first count in the plea agreement, the trial judge sentenced defendant on count two for possession of a weapon for an unlawful purpose to the maximum sentence of ten years with a five-year period of parole ineligibility, to be served consecutively to the sentence imposed on the first count. Thus, defendant was sentenced to an aggregate term of 30 years with a 15–year period of parole ineligibility consistent with the State's recommendation under the plea agreement.

In violation of the plea agreement, defendant filed a notice of appeal on June 11, 1986. Since the sole issue on appeal was the alleged excessiveness of the sentence, the appeal was scheduled for oral argument, without the filing of briefs, on October 1, 1986. However, the transcript, presentence report and the balance of the record on appeal were not filed until May 18, 1987, and the matter was relisted for oral argument on June 9, 1987, almost one year after the notice of appeal had been filed.

During the course of oral argument on June 9, 1987, the presiding judge expressed concern because the sentences had been ordered to be served consecutively. The deputy attorney general argued that *State v. Yarbough*, 100 *N.J.* 627 (1985), *cert.* den. *Yarbough v. New Jersey*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), had not been decided at the time of this plea, and thus the trial judge had not made a specific statement of his reasons.[2] When the presiding judge observed the potential for disparity in sentences imposed in aggravated manslaughter cases and noted that there are judicial obligations in imposing sentence, the deputy attorney general responded:

Absolutely, your Honor. But rather than amending this—this sentence, then, the State would exercise its option to—withdraw from the ... plea agreement.

---

[2] *State v. Yarbough* was decided by the Supreme Court on October 7, 1985, six months prior to the sentencing in this case.

When the presiding judge questioned why the State should be permitted to withdraw simply because a sentence is not imposed in accordance with the recommendation contained in the plea agreement and noted that sentencing is a matter of judicial discretion, the deputy attorney general said:

Absolutely, your Honor. But my—I'm not basing my—statement on that. I'm basing it on the fact that it very clearly on the transcript here is a waiver of two things. Not just the merger issue, but also a waiver of the right to appeal.

Now, obviously, we can't say that somebody cannot appeal. They can. But when—in a case where there is a plea agreement, and there is a waiver of the right to appeal, the option, if the defendant takes an appeal, is to vacate—is to vacate the plea and start all over again. And the State is more than—I spoke with the county prosecutor yesterday, and he's more than willing to exercise that option.

The oral argument concluded with defendant's counsel noting that his client did not wish to withdraw his plea but rather to go forward with the appeal.

Later the same day, June 9, 1987, we entered an order affirming the sentence imposed for aggravated manslaughter of 20 years with a ten-year period of parole ineligibility,[3] but continued:

We conclude, however, that there is nothing in the judge's statement of reasons justifying within the guidelines of *State v. Yarbough*, 100 *N.J.* 627 (1985), the consecutive imposition of the sentence imposed on the weapons charge. Accordingly and pursuant to *Yarbough* guidelines, we direct the modification of the judgment of conviction to provide that both sentences be served concurrently and we remand to the trial court for entry of a modified judgment so providing.

*See N.J.S.A.* 2C:44–7. The State's motion for reconsideration was denied on August 19, 1987, "without prejudice to the State's right to move the trial court within 10 days from the date hereof for relief from the plea agreement."

On August 25, 1987, the prosecutor moved to vacate the plea agreement. The motion was heard on September 28, 1987 but was not decided by the trial judge until his letter opinion dated

---

[3]By the sense of the order we also affirmed the sentence imposed on the weapons charge.

April 7, 1988 in which he granted the State's motion.[4]  No order was entered at that time.  By letter of May 10, 1988, the public defender inquired of the prosecutor when he intended to submit an order implementing the judge's decision vacating the plea. The order was finally signed on June 10, 1988 by a different judge since the motion judge was out sick.  Thus, two years had passed since defendant had filed his notice of appeal.  By leave granted defendant appeals and we now reverse.

Notwithstanding the waiver by a defendant of the right to appeal as part of a negotiated plea agreement, the defendant has the right to take a timely appeal.  However, if he does, "the plea agreement may be annulled at the option of the prosecutor, in which event all charges shall be restored to the same status as immediately before the entry of the plea." *R.* 3:9–3(d); *see State v. Gibson,* 68 *N.J.* 499 (1975), the holding of which was codified in the rule.

At issue in this case is the time within which the State must move to annul the plea agreement.[5]  *R.* 3:9–3(d) does not contain a time limit.  Defendant notes the following language from the *Gibson* case concerning the right of the State:

> Of course, a defendant who has obtained sentence or charge concessions in consideration of the appeal-waiver would be subject to their revocation at the option of the State, immediately upon a filing of the appeal. [68 *N.J.* at 512]

Defendant recognizes that the use of the word "immediately" by the Supreme Court in *Gibson* did not mean that the motion to vacate must be made immediately, but that such a motion

---

[4]The reason for the delay in deciding the motion does not appear in the record.  However, two letters from the public defender to the judge, one dated January 21 and the other dated March 29, 1988, requesting a ruling, have been provided to us.

[5]There is no merit to the suggestion by the State that the condition of our order of August 19, 1987 denying its motion for reconsideration without prejudice to the State's right to move for relief from the plea agreement is the law of the case.  *See State v. Stewart,* 196 *N.J.Super.* 138 (App.Div.), certif. den. 99 *N.J.* 212 (1984).  Clearly, our order did not decide the issue but simply authorized application to the trial court so that the issue could be considered.

should be made "within a reasonable time after the appeal is filed" (as noted by Justice Schreiber in his concurring opinion in *Gibson* at p. 517) or "promptly." *See State v. Sainz*, 210 *N.J.Super.* 17, 29 (App.Div.1986), aff'd 107 *N.J.* 283 (1987). We agree.

█ What may be a "reasonable time" or "promptly" is subject to conjecture, but we are totally satisfied that a motion to vacate the plea after defendant's appeal has been argued and decided, as in this case, comes too late. Conversely, there is merit to the State's position that it should not be required to immediately move to annul the plea agreement upon a defendant filing a notice of appeal. The State should have an opportunity to know the basis for the appeal and some time to evaluate the merits of the defendant's arguments. For example, in a normal appeal, a short synopsis of the basis of a defendant's appeal should be contained in the case information statement required by *R.* 2:5-1(a).

In this case, the only issue raised on appeal was the excessiveness of sentence of which the State had knowledge from at least October 1, 1989 when the matter was first scheduled for oral argument. We recognize that the plea agreement contemplated that the State would recommend an aggregate term of 30 years with a 15-year period of parole ineligibility. Since at the time the maximum sentence for aggravated manslaughter was 20 years, it was obvious that it would be necessary not only to impose the maximum sentence for aggravated manslaughter, but also to impose the maximum sentence for the weapons offense and to require that the two sentences be served consecutively in order to reach a 30-year term. It would also be necessary to impose maximum periods of parole ineligibility to be served consecutively. We recognize that a recommendation for an aggregate term of 30 years with a 15-year period of parole ineligibility was a substantial concession by the State which undoubtedly took into consideration defendant's youth, lack of any prior adult convictions and his cooperation with the State.

Notwithstanding these circumstances which clearly support a decision by the State to move promptly to annul the plea agreement upon its violation by defendant's filing of a notice of appeal, the trial judge was obliged to follow the mandates of the New Jersey Code of Criminal Justice as interpreted and implemented by the decisions of our Supreme Court in deciding the sentence to be imposed.

At sentencing, counsel for defendant requested the judge to consider giving a lesser sentence because of defendant's youth and the absence of any prior adult convictions. The State cannot insist that a particular sentence be imposed, even though it be negotiated. Sentencing is always a matter of discretion for the trial court. *State v. Spinks,* 66 *N.J.* 568, 574 (1975). The prosecutor was represented at sentencing and the judge's comments were made in the presence of his representative. Thus, when defendant appealed alleging the excessiveness of his sentence, the State was in a position to evaluate the merits of that claim very quickly.

It is evident that the sentencing judge concluded that defendant was getting a substantial break in being charged with aggravated manslaughter and a weapons charge, rather than murder, and that the recommended sentence by the prosecutor was appropriate for the offenses. He thus imposed maximum sentences and maximum periods of parole ineligibility to reach the recommended sentence, but completely failed to give any reasons for those sentencing decisions as required by the Code and our Supreme Court decisions.

In his decision granting the State's motion to vacate the plea agreement, the trial judge said:

> To compel the State to take action to vacate the plea agreement prior to the appellate hearing would completely obliterate the defendant's right to appeal. That is, in all plea agreement cases the State would be forced to move to vacate immediately upon filing a notice of appeal and defendant would be, in all such cases, deprived of his right to appeal.

We fail to understand the logic of that reasoning. If the State were permitted to await the outcome of the appeal before deciding to move to vacate the plea, upon the grant of such a motion the defendant's successful appeal would be a pyrrhic victory. The appellate process would become nugatory, wasting the time of the litigants and the court in briefing, arguing, considering and deciding the appeal.

■ The State's reliance upon *State v. Roddy*, 210 *N.J.Super.* 62 (App.Div.1986), is misplaced. In the first place, the State cannot insist that a particular sentence be imposed even though it be negotiated. *State v. Spinks, supra.* Thus, imposition of its recommended sentence cannot be reasonably expected by the State. The State did, under the plea agreement, have a reasonable expectation that defendant would not appeal and, accordingly, pursuant to *R.* 3:9–3(d), had a right to move to annul the plea agreement. However, the question is, within what time must the State avail itself of that right. While this opinion does not fix that time limit, we simply decide today that a decision made after the appeal has been argued and decided comes too late. The rule should contain a time limit. For example, we observe the provisions of *N.J.S.A.* 2C–44–1f(2), which provides in pertinent part:

> If the court does impose sentence pursuant to this paragraph, or if the court imposes a noncustodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for ten days in order to permit the appeal of such sentence by the prosecution.

We do not suggest a time limit of ten days, but we note the effort in the Code to create finality and to avoid questions of double jeopardy by fixing a time limit before the sentence becomes effective. We therefore reverse the decision in this case and refer to the Criminal Practice Committee the question of fixing a time limit for the State to act on its right to annul the plea agreement contained in *R.* 3:9–3(d).

The order vacating the pleas is set aside and the judgment of conviction and sentence imposed, as modified by our order of June 9, 1987, are reinstated.