944 A.2d 730 (2007)
399 N.J. Super. 419
STATE of New Jersey, Plaintiff
v.
Angel M. CARRERO, Defendant.
Superior Court of New Jersey, Law Division, Criminal Part Camden County.
Decided August 8, 2007.
*731 David E. Deitz, Assistant Camden County Prosecutor, for plaintiff.
John C. Iannelli, for defendant.
COOK, J.S.C.

INTRODUCTION
Angel M. Carrero pled guilty to the third degree offense of cocaine distribution. In the "Supplemental Plea. Form For Drug Offenses" signed by Carrero, he confirmed his understanding that if he pled guilty, he would be required to forfeit his driver's license for a period of six to twenty-four months. In return for his guilty plea, he negotiated a non-custodial probationary sentence which, along with imposition of the mandatory fines and penalties, included the suspension of his driver's license mandated by N.J.S.A. 2C:35-16(a). During the plea colloquy, Carrero again acknowledged that forfeiture of his driving privileges was one of the consequences of his guilty plea. Nonetheless, prior to sentencing, his counsel moved for a "waiver" of the forfeiture of his driving privileges. In a supporting brief, counsel represented that Carrero is a "service technician" for Verizon, and that in the course of his work, he is required to drive a Verizon company truck from jobsite to jobsite. Carrero's counsel asserted that a license suspension would result in Verizon terminating Carrero's employment, and that such termination would cause extreme hardship to Carrero and his dependents. Counsel's brief does not mention that Carrero was caught selling cocaine and other controlled dangerous substances from his Verizon truck, and was, in effect, operating a mobile CDS sale-and-delivery service utilizing a Verizon truck.[1]
THE ABSENCE OF "COMPELLING CIRCUMSTANCES" WARRANTING AN EXCEPTION TO THE FORFEITURE OF CARRERO'S DRIVING PRIVILEGES

A THE LICENSE FORFEITURE STATUTE
N.J.S.A. 2C:35-16(a) mandates the forfeiture of the driving privileges of those persons convicted of controlled dangerous substance crimes. There is no discretion as to the timing of the forfeiture; it must commence the day sentence is imposed. N.J.S.A. 2C:35-16(a) (period of suspension of driving privileges shall commence on day sentence is imposed); State v. Hudson, 286 N.J.Super. 149, 154, 668 A.2d 457 (App.Div.1995) (citing State v. Alfano, 257 N.J.Super. 138, 142-43, 607 A.2d 1378 (Law Div.1992)). The statute does provide for an exception to imposition of the license suspension upon a showing of "compelling circumstances," which requires proof of "extreme hardship", and the absence of an "alternative means of transportation."
There are no reported New Jersey decisions dealing with the license forfeiture exception provisions of the statute, including what constitutes "extreme hardship," and the absence of "alternative means of transportation." There are a few New York decisions dealing with those same terms, "extreme hardship" and "alternative means of transportation," contained in the New York Motor Vehicle Code provisions *732 mandating license suspensions for those driving under the influence of drugs or alcohol. See N.Y. Vehicle & Traffic Law § 1193(2)(e)(7)(e); People of the State of New York v. Bridgman, 163 Misc.2d 818, 622 N.Y.S.2d 431 (Canandaigua City Ct.1995); People of the State of New York v. Correa, 168 Misc.2d 309, 643 N.Y.S.2d 310 (N.Y. City Crim.Ct.1996).
In Correa, the court noted that New York's "extreme hardship" exception to a license suspension is statutorily defined as the "inability to obtain alternative means of travel to or from the [licensed defendant's] employment." However, the "extreme hardship" exception does not extend to a drug or alcohol offender whose job requires him to drive in the course of his employment. Thus, in that case, the application of Ruben Correa, a New York City firefighter convicted of driving drunk on his way home from work, was rejected by the court, because the New York "extreme hardship" exception does not apply to those who must be licensed to drive in the course of their occupations, and also because Correa did not show that he had no alternative means of travel between his home and the firehouse where he was stationed. The court noted that Correa could take a twenty-two-minute train from Staten Island, his hometown, to the Staten Island Ferry, then take a thirty-minute ride on the Staten Island ferry to Manhattan, and then take a subway to his assigned firehouse in Manhattan.
In the Bridgman and Correa cases, both courts found that the exception for an "extreme hardship" due to a "lack of alternative means of travel" extends only to the licensee's inability to obtain alternative means of travel from his home to his employment. Both decisions noted the absence of any statutory provision for an "extreme hardship" exception where, as a condition of employment, the defendant has to travel between various "worksites."
Unlike the New York statutory scheme, the New Jersey license forfeiture statute, N.J.S.A. 2C:35-16(a), does not provide for a "hardship" license for travel between defendant's home and his place of employment. The statute requires that in order for a defendant to avoid a license suspension he must show (1), an "extreme hardship" resulting from the license suspension, as well as (2), the unavailability of "alternative means of transportation." N.J.S.A. 2C:35-16(a).

B. THE CARRERO CASE
Carrero's prior history includes several disorderly persons offenses, including interfering with police (1994), providing alcoholic beverages to a minor (1998), and most recently, a CDS-related prowling-public-places offense (2006). The drug offense involved in this case occurred on October 12, 2006. Carrero has a history of substance abuse, including snorting cocaine.
Carrero does not assert nor show that he has no alternative means of transportation from his Turnersville home to Pennsauken, where Verizon, his employer, is situated, nor does he assert or show he will be unemployable, or that there is an absence of any other alternative employment. He is thirty-four, he is a United States citizen by birth, and he speaks English. Carrero told the presentence report writer he is in good health and has been employed by Verizon of Pennsauken as a service technician for nine years. He is also an experienced meat cutter, having worked in that trade for four years, from 1994 to 1998. Carrero is a high school graduate, with one semester of college education. Thus, he has the education and job experience to obtain and maintain gainful, lawful employment with employers *733 other than Verizon, and he makes no showing to the contrary.
Besides the paucity of any proper showing by Carrero of "compelling circumstances" warranting non-imposition of the license suspension mandated by N.J.S.A. 2C:35-16(a), there follows a matter of even greater concern militating against affording Carrero any such relief. Specifically, prior to sentencing, the defendant, his counsel, the prosecutor and the Court had the benefit of the presentence report, as provided under N.J.S.A. 2C:44-6(a), and mandated by R. 3:21-2(a) in all but death penalty cases. The Supreme Court years ago recognized that:
[w]hen a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision. We have stated before that the court may look to other evidence in the record when making such determinations, that it should consider "the whole person," and all the circumstances surrounding the commission of the crime. See State v. Marzolf, 79 N.J. 167, 398 A.2d 849 (1979); State v. Humphreys, 89 N.J. 4, 444 A.2d 569 (1982). What is important  when the court goes beyond defendant's admission or factual version  is that the court not sentence defendant for a crime that is not fairly embraced by the guilty plea. See Sainz, supra, 210 N.J.Super. at 31, 509 A.2d 192 (Baime, J., concurring).

State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987), affirming 210 N.J.Super. 17, 509 A.2d 192 (App.Div.1986).
The presentence report reflects that although Carrero told the report writer he drives a Verizon van from worksite to worksite, he did not reveal, nor did defense counsel recite in his brief, the fact that Carrero also operated Verizon's van for a side business of his, a mobile CDS sale and delivery business, without Verizon's knowledge or authorization. There is no indication in the record that Verizon knew of, let alone authorized, Carrero's "extracurricular" unlawful use of its van.
The police reports contained in the presentence report provide a fuller background of the events of October 12, 2006, the date Carrero was arrested for the CDS sales transaction giving rise to this case. Around 5:00 p.m. that afternoon, Carrero, a resident of Turnersville, drove a white van to a parking lot located at the K-Mart Plaza in Gloucester Township, Camden County. The van was marked, "Verizon". It belonged to Verizon, Carrero's employer. The Verizon van was a 1997 white Dodge, bearing the commercial license plates, "X173W." Shortly after Carrero arrived and parked in the K-Mart Plaza lot, a pick-up truck pulled in alongside Carrero's "Verizon" van. The pickup driver handed Carrero money and, in exchange, Carrero handed the pick-up truck driver a bag of cocaine. Carrero never got out of the Verizon van; he conducted the CDS sale from that van. He then left the parking lot. A short time later, he was arrested as he walked out of a video store in a nearby strip mall, to the Verizon van. Carrero had $212 cash, as well as significant quantities of CDS, including cocaine, oxycodone, hydrocodone, methadone, diazepam, and morphine, which the police seized from inside the Verizon van, including a stash of CDS in the van's open console. Carrero told police that the CDS he sold to the pickup truck driver was an "8-ball," the street term for an eighth of an ounce of cocaine, in exchange for $130. He told police he buys his cocaine in Camden, and then sells it. Carrero related that he had finished a Verizon job in Winslow Township, and then drove the Verizon van to the K-Mart Plaza parking lot, *734 where he sold cocaine to the pickup truck driver. At first, Carrero denied having any CDS on him, telling the arresting officer, "No, I don't have anything on me; I work for Verizon, can you cut me a break?" Carrero added that he "just want[ed] to get to my next [Verizon] job  you can search me and the [Verizon] truck." He also carried "business cards" in his wallet.
In essence, Carrero operated a "CDS store" in a mobile van, a Verizon van, without telling his employer about his CDS side business. Indeed, at sentencing, Carrero said he still had not told Verizon about his CDS-related use of its van because if he told Verizon, he would lose his job.
In light of Carrero's admittedly unauthorized and unlawful use of his employer's van to engage in CDS sales, any claim that "compelling circumstances" exist, by way of extreme hardship, and no alternative means for Carrero to go from worksite to worksite in Verizon's van, thus resulting in the loss of his employment with Verizon, is entirely due to Carrero's own illegal conduct in using Verizon's van as part of his CDS sales business.
By his motion to waive the license forfeiture mandated by N.J.S.A. 2C:35-16(a), and his failure, and that of his attorney to advise the court in his brief, and advise Verizon, his employer, that he was using his employer Verizon's vehicle to sell illicit drugs, Carrero attempts to persuade the court to allow him to keep on driving, thus enabling him to continue his illicit drug trade, and utilize his employer's vehicle in the course of his illicit trade!
Given the circumstances of this case, it need not be decided whether the provision in N.J.S.A. 2C:35-16, regarding the unavailability of "alternative means of transportation," applies only to a defendant's inability to obtain alternative transportation means from his residence to his employer's business, as it does under New York law, or whether, unlike the New York law, that provision should be construed to include defendant's ability to obtain alternative means of transportation from jobsite to jobsite. Rather, it is appropriate in cases like this to construe N.J.S.A. 2C:35-16(a) as barring, a defendant any relief from the license forfeiture provision where, as here, a defendant asserting the "extreme hardship" exception has occasioned the loss of his employment through his unauthorized and criminal use of his employer's vehicle.

CONCLUSION
Defendant's application for waiver of the driver's license forfeiture provision of N.J.S.A. 2C:35-16(a) is a sham, and it is denied.
NOTES
[1] See RPC 3.3 (lawyer's duty of candor toward the tribunal).