NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3436-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LEWIS HOOPER,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 10, 2019**
>
> **APPELLATE DIVISION**

Argued September 26, 2018 - Decided May 10, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-06-0768.

John W. Douard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John W. Douard, of counsel and on the brief).

David M. Liston, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

Defendant Lewis Hooper appeals his sentence on a nine-count indictment and the trial court's denial of his motion to withdraw his open plea after sentencing based, in part, on a claim of ineffective assistance of counsel. Because we conclude the court must hold an evidentiary hearing on defendant's claim of ineffective assistance of counsel in connection with his plea, we reverse the order denying his motion and remand for that hearing. We also vacate defendant's sentence on account of the court's failure to address the Yarbough[1] factors after determining to impose an extended-term sentence and remand for resentencing, if necessary, following the hearing on defendant's motion to withdraw his plea.

In January 2013, defendant and two confederates, Chinikka Lockhart and Mohamed Kamara, agreed to arm themselves with a gun and go to the home of Mario Lombardo, Jr. to steal his marijuana. After Lombardo answered the door to Lockhart, defendant and Kamara stepped inside while Lockhart slipped back onto the porch. Defendant pointed the gun at Lombardo while Kamara rifled Lombardo's pockets. After Kamara wrested the marijuana from Lombardo, Lombardo fell backward as Kamara turned to flee. Before following Kamara out the door, defendant shot Lombardo.

---

[1] State v. Yarbough, 100 N.J. 627, 643-44 (1985).

The bullet struck Lombardo in the head, shattering his skull. After several surgeries and a year in the hospital, Lombardo, twenty-two years old at the time of the shooting, remains grievously injured. He is paralyzed on one side and cannot speak. Defendant claimed he shot Lombardo after seeing him reach toward his waistband, presumably for a gun. The State claimed defendant shot Lombardo to prevent him from identifying his assailants. Both the robbery and the shooting were captured, at least partially, on security cameras mounted in Lombardo's porch and front hall. Defendant can be seen firing the shot that struck Lombardo, but Lombardo is not visible in the frame.

Defendant was indicted on charges of second-degree conspiracy to commit armed robbery and robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count one); first-degree armed robbery, N.J.S.A. 2C:15-1 (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) and (2) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count five); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count six); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count seven); third-degree hindering apprehension or prosecution of oneself, N.J.S.A. 2C:29-3(b)(4) (count eight); and third-degree hindering apprehension or prosecution of another, N.J.S.A. 2C:29-3(a)(7) (count nine).

Defendant, twenty-nine years old at the time of these offenses, was extended-term eligible. He had been convicted of third-degree theft committed in 2005, when he was twenty-one years old, and sentenced to probation in 2006. In 2009, he violated probation by committing a drug offense. He pleaded guilty to the violation of probation and to third-degree possession of CDS and was sentenced in March 2010 to five years in State prison with a two-and-a-half-year parole ineligibility term. Because both crimes were committed within ten years of the offenses for which defendant was being sentenced in 2016, he qualified for extended-term sentencing as a persistent offender. See N.J.S.A. 2C:44-3(a).

Near the time of defendant's arraignment, the State offered to recommend a sentence of fifty years in exchange for defendant pleading guilty to conspiracy, armed robbery, robbery, attempted murder and unlawful possession of a weapon. Defendant rejected that offer.

That is where negotiations stood for nearly three years. On May 11, 2016, however, the first assistant prosecutor wrote to defendant's counsel confirming their "recent conference" at which defendant "presented the State with a counter offer of twenty (20) years in a New Jersey State Prison." The letter confirmed the State's rejection of that offer but stated the writer "will present to the [victim's] family, a counter offer which will mandate the

4                                                                                          A-3436-16T3

defendant serving approximately thirty (30) years in a New Jersey State Prison." What happened next is detailed in two "affidavits"[2] presented by defense counsel, the first assistant deputy public defender and her second chair, then an assistant deputy public defender, now a lawyer in private practice.

Those lawyers aver that they attended a pre-trial conference on June 13, 2016, where they discussed their plea negotiations with the prosecutor in the chambers of the trial judge. They contend "[t]he State's final offer was a thirty-year sentence subject to an eighty-five percent parole disqualifier under the No Early Release Act—a sentence that would have required Mr. Hooper to consent to be sentenced as a persistent offender, in other words, [to] a discretionary extended term." Counsel claim they responded by advising that defendant "was interested in a plea but not 30 years." The first assistant deputy public defender further claims she told the prosecutor she "would never advise [her] client to accept a plea that called for a discretionary extended term, particularly given his minimal prior record." Indeed, she had written to

---

[2] Although styled as affidavits, the documents are not sworn or certified. See R. 1:4-4. We note, however, and confirmed at oral argument, that the State does not challenge the accuracy of the statements regarding the substance of the conversation with the judge in chambers on June 13, 2016.

A-3436-16T3

defendant days earlier advising she intended to argue defendant was not extended-term eligible.[3]

In response to her unwillingness to recommend defendant agree to be sentenced to an extended term, counsel avers the prosecutor suggested defendant could enter a guilty plea to multiple counts of the indictment with consecutive sentences. The defense lawyers claim the judge interjected "that he did not see it as a 'consecutive case,'" characterizing it "as a 'robbery gone bad,'" and "that this case would not result in consecutive sentences given the facts and circumstances." Counsel claim that following that conference, they "were confident that [the judge] would not run the counts consecutively, should Mr. Hooper choose to plead without a sentencing recommendation from the State."

Accordingly, they met with their client three days later and "advised him that if the [j]udge finds that he meets the statutory criteria as a persistent offender, he could receive as much as the State's thirty year offer, but that the

---

[3] Specifically, in that letter counsel advised defendant that although he was sentenced in 2006 for a conviction in 2005, he was resentenced on that matter, following a violation of his probation, in 2010. Counsel advised she "intend[ed] to argue that the resentencing controls and that [he was] not discretionarily extended term eligible." She further advised defendant that "[i]f the [j]udge agrees, your sentencing is limited to 10-20 years subject to NERA on the 1st Degree offenses. Of course the State could argue for consecutive sentences, however, the law is not on their side as this is one continuous event and one victim."

[j]udge was almost assuredly going to sentence him to something between ten and thirty years in State prison." The first assistant deputy public defender averred she told defendant

> that an open plea would result in a sentence between 10 and 30 years, but would ultimately be left to [the judge]. We told him that since the current plea offer was 30 years, it was highly unlikely that the [j]udge would go above that number. We told Mr. Hooper that the [j]udge is never bound by plea offers, but since we had a conference, [the judge] was aware of the sentence that the State was recommending.

Based on the advice of his counsel, defendant pleaded guilty the next day to all the counts in the indictment with no recommendation from the State. In the course of providing a factual basis for his plea, defendant agreed with his counsel that when the "robbery was concluded, there was some sort of struggle at the end of it." Defendant further agreed that he "perceived" the victim to be "reaching for something," which defendant thought "may have been a weapon" and thus shot him with the intent of killing him before the victim "kill[ed] [him] first." Defendant indicated he understood "the law of self-defense would not be available to [him] at trial" because, not only was he in the victim's home, he was "obviously, the initial aggressor."

The judge engaged defendant in a thorough plea colloquy, in which he advised defendant his maximum sentencing exposure was sixty-one-and-a-half years, but if the court granted the State's extended-term motion, it could

sentence defendant to life in prison. The judge confirmed defendant had spoken with his counsel "about that possibility" and that counsel had answered all of his "questions about that possibility." The judge also took pains to ensure defendant understood what pleading "open" entailed, emphasizing "[s]o there's no expectation of you getting a 10 or a 15 or a 10 or a 30. It's — right now, it's completely open." Defendant agreed with the judge that defense counsel answered all his "what if" questions and had given him "their best prediction of what may or may not happen in this case, based on their many years of experience" and that he was satisfied with their work on his behalf.

Prior to sentencing, the prosecutor filed a brief seeking a seventy-five-year prison term, including a fifty-five-year extended term for attempted murder and a consecutive twenty-year term for armed robbery, and supplied the court with the video of the robbery and shooting. The judge granted the State's motion for an extended term, rejecting defense counsel's argument that because defendant was resentenced on his 2006 theft conviction in 2010 following his violation of probation, on the same day he was sentenced on his conviction for possession of CDS, he effectively had only one prior conviction and was thus not extended-term eligible.[4]

---

[4] Defense counsel argued at sentencing that "because a [violation of probation] is not a crime," when the court resentenced defendant on his 2006

(continued)

The judge also rejected counsel's argument that defendant shot Lombardo because defendant thought Lombardo was going for a gun, or that the court was bound to accept "[defendant's] version of the facts." Stating he "reviewed the videotape a number of times," the judge ruled he was entitled to judge defendant's credibility "like any other witness," and did "not [accept] Mr. Hooper's belated proffer that this was — self-defense." He thus rejected defendant's contention that mitigating factor four, substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, N.J.S.A. 2C:44-1(b)(4), was present and found aggravating factors three, the risk defendant would commit another offense; six, the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted; and nine, the need to deter, N.J.S.A. 2C:44-1(a)(3), (6) and (9), and no mitigating factors.

The judge merged for sentencing purposes defendant's convictions for conspiracy, robbery, armed robbery and possession of a handgun for an unlawful purpose and imposed an extended twenty-five-year prison term "on those counts," subject to the periods of parole ineligibility and supervision

---

(continued)
theft conviction in 2010, "the conviction date for the theft from a person is now March 26th, 2010." Defense counsel explained his "position [was] that the March 26th, 2010 [judgment of conviction] supplants that 2006 conviction here," thereby leaving defendant with only the 2010 conviction on his record.

required by the No Early Release Act, N.J.S.A. 2C:43-7.2. Concluding defendant shot the victim "purely gratuitous[ly]" after the robbery was completed, the judge declined to merge defendant's convictions for attempted murder and armed robbery, and further found that Yarbough, most notably its injunction against "free crimes," supported a consecutive sentence of a twenty-year NERA term on defendant's conviction for attempted murder. Yarbough, 100 N.J. at 643. The judge imposed a second consecutive extended term of twelve years for unlawful possession of a weapon, with six years of parole ineligibility under the Graves Act, N.J.S.A. 2C:39-4(a), a concurrent four-year extended term for resisting arrest and consecutive seven-year extended terms on defendant's convictions for hindering apprehension or prosecution of himself and another to be served concurrent to one another, for an aggregate sentence of sixty-four years in State prison, forty-four of which were to be served without eligibility for parole.

The judge explained the factor driving the sentence was that the offenses were committed while defendant was on parole. Addressing the aggravating factors, the judge found "it's not a question of if [defendant] will commit another crime, it's when he would commit another crime." Stating he had "no expectation and no hope" the sentence imposed would deter defendant, the judge expressed his expectation

that the sentence I will impose — and I know the word will get out to the community; the media is not here because the media has priorities that are not always correct, and they don't always report on stuff that goes on in the courthouse. But I know that the number I impose today will go out. And by this evening, people in New Brunswick will know what number it is, and they're going to go, damn. Damn. Because that's the reaction I want from the sentence that I give: Damn, that's serious.

And maybe, just maybe, some other knucklehead out in New Brunswick, or anywhere else in this county, will think twice about doing what this defendant did. So the [c]ourt is putting extraordinary emphasis on deterring others from violating the law.

Five days after the initial sentencing, and before the judgment of conviction was entered, the judge corrected and restated the sentence by reducing the twelve-year extended term for unlawful possession of a weapon to an ordinary maximum term of ten years with five years of parole ineligibility, reducing the four-year extended term for resisting arrest to an ordinary term of eighteen months and reducing the two seven-year extended terms for hindering prosecution to ordinary maximum terms of five years each, thus bringing the sentence into line with N.J.S.A. 2C:44-5(a)(2), which "expressly and unequivocally states that no more than one extended term sentence may be imposed in a single sentencing proceeding." State v. Robinson, 217 N.J. 594, 605 (2014).

The judge also clarified the three counts for resisting and hindering would run concurrent to one another but consecutive to the merged counts, as well as to the successive consecutive terms issued on the counts for attempted murder and unlawful possession of a handgun and imposed appropriate fines and penalties not imposed when the judge pronounced the sentence. The amended sentence thereby reduced defendant's aggregate sentence to sixty years, leaving the parole ineligibility term of forty-four years unchanged. The judge filed an amended judgment of conviction the following week to specify the sole extended term was imposed on merged count two, defendant's conviction for armed robbery. See State v. Thomas, 195 N.J. 431, 437 (2008) (underscoring the need to explain imposing an extended term on a particular count).

Defendant filed a prompt motion to withdraw his plea, supported by the "affidavits" of his counsel described above and his own certification. Defendant described the "several communications" with his counsel that prompted his decision to plead to the indictment, including the June 3, 2016 letter in which counsel "predicted that based on their interpretation of the law [his] sentence for all charges would be between 10 and 20 years NERA." He also described his meeting with his lawyers on June 16, 2016, in which they urged him to plead to the indictment without a recommendation from the State.

Defendant claimed he did not recall counsel advising him at that meeting "that the State would recommend that a custodial term not exceed 30 years with 85% parole ineligibility," but did remember "them telling [him] that under no circumstances would the [c]ourt sentence [him] to greater than 30 years." He averred counsel "further advised that based on conversations with the [c]ourt in chambers[,] the [c]ourt was likely to sentence [him] to a sentence significantly less than 30 years if [he] pled to the Indictment." Defendant claimed he relied on his counsel's "legal knowledge to believe that [he] was not extended term eligible nor facing consecutive sentencing for the separate charges on the Indictment" when he waived his right to trial and entered an open plea to the indictment.

The Public Defender's Office appointed outside counsel who briefed and argued the motion on defendant's behalf. Designated counsel contended the representation defendant received from the Public Defender in connection with his plea was "grossly deficient." He argued plea counsel erroneously believed, and argued to the court, that the court was confined to defendant's version of the facts in imposing sentence and could not consider other information, such as the video, which contradicted his story.[5] Counsel also contended plea

---

[5] Plea counsel relied for that proposition on our opinion in State v. Sainz, 210 N.J. Super. 17, 26 (App. Div. 1986), holding that "[w]hen the conviction is the
(continued)

counsel "improperly relied, apparently, on conversations that took place in chambers which led them to believe that [defendant] was not going to get a consecutive sentence" and erroneously concluded "that somehow [defendant] was not eligible even to be considered as extended term eligible, when . . . he clearly was." Counsel argued plea counsel should have, at the very least, made a motion to have the court decide whether defendant was extended-term eligible before counseling him to enter an "open" plea and not waited to test their legal theory until defendant's sentencing date.[6]

Designated counsel further asserted plea counsel never explained to defendant that he could accept the State's thirty-year offer and argue for less time. Instead, he claimed "[t]he direct opposite was conveyed to [defendant],

---

(continued)

result of a plea, the judge may not make findings regarding the offense and the defendant's role therein that are inconsistent with the factual basis that the defendant has given or has acknowledged," apparently not realizing the Supreme Court disagreed with us on that point. See State v. Sainz, 107 N.J. 283, 292 (1987). The Sainz Court made clear that "[w]hen a trial court imposes a sentence based on defendant's guilty plea, the defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision," but it may instead "look to other evidence in the record when making such determinations," so long as "the court not sentence defendant for a crime that is not fairly embraced by the guilty plea." Id. at 293.

[6] We note plea counsel should also undoubtedly have made resort to Rule 3:9-3(c) and secured the judge's agreement to memorialize on the record his conditional indication about the sentence before counseling defendant in reliance on the judge's remarks in chambers.

which was if you accept the 30 years, that's what you're going to get, you can't do better." Plea counsel thus erroneously advised defendant he had no realistic exposure to a sentence longer than the thirty years the State was offering, but "[t]he only way you can do better is to plead open" to the entire indictment.

Designated counsel pointed out that had defendant entered a negotiated plea in exchange for a recommended thirty-year sentence the court subsequently determined it could not impose, defendant would have been permitted to withdraw his plea. He argued the same result should apply here where defendant, based on bad advice, rejected a thirty-year sentence the court obviously thought inadequate, resulting in defendant pleading "open" and the court sentencing him to a term twice as long.

Contending defendant did not "validly give up his right to a trial" but only pleaded guilty based on patently erroneous legal advice, designated counsel argued defendant should be permitted an immediate evidentiary hearing on his application to withdraw his plea based on his counsel's ineffective assistance. Counsel advised the court he was ready to proceed as plea counsel were present in court and prepared to testify.

The court declined to entertain defendant's allegations of ineffective assistance or "treat[] this as a [motion] for post-conviction relief," declaring such claims "premature." The judge rejected any suggestion that counsel's

15

impression of a conversation in chambers somehow converted the open plea to a conditional one, stating "there was no representation by the [c]ourt in any way, shape, or form, in any setting, in chambers or in court, as to what the sentence would be. . . . Conversation is not a representation." The judge also rejected counsel's suggestion that the court should have permitted defendant to withdraw his plea upon concluding the thirty-year sentence the State was willing to recommend was inadequate, notwithstanding that defendant had rejected the State's offer, stating no case imposed such a responsibility on a sentencing court.

Applying the Slater[7] factors, the judge concluded defendant had not asserted a colorable claim of innocence, the existence of the open plea "militate[d] against him" and prejudice to the State was "not an overwhelming issue, so it [did] not drive." The judge stated the focus was on Slater's second factor, defendant's reasons for withdrawing his plea. The judge characterized those reasons as defendant's lawyers' "predictions as to what the law may be, not affirmative misstatements of the law," which predictions "did not bear fruit" and were not sufficient to justify relief.

---

[7] State v. Slater, 198 N.J. 145 (2009). The four Slater factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58.

A-3436-16T3

We removed defendant's appeal from the limited sentencing calendar under Rule 2:9-11 to a plenary calendar at defendant's request. He now raises the following issues for our consideration:

POINT I

THE MOTION JUDGE ERRED IN DENYING MR. HOOPER'S MOTION TO WITHDRAW HIS PLEA WHERE HE RELIED ON HIS ATTORNEYS' MISLEADING LEGAL ADVICE, RESULTING IN A GUILTY PLEA THAT WAS NOT KNOWINGLY AND INTELLIGENTLY ENTERED, PURSUANT TO STATE V. KOVACK AND R. 3:9-2. MOREOVER, CONTRARY TO THE JUDGE'S FINDING, THE WEIGHT OF THE SLATER FACTORS SUPPORT A PLEA WITHDRAWAL. THEREFORE, MR. HOOPER'S GUILTY PLEA CANNOT STAND. U.S. CONST. AMENDS. V, VI, AND XIV; N.J. CONST. ART. I, ¶¶ 1, 10.

    A.    Because There Was No "Meeting Of The Minds" About The Possible Consequences Of An Open Plea, Mr. Hooper Did Not Enter Into A Valid Plea Bargain.

    B.    The Judge Failed To Properly Analyze The Slater Factors.

    C.    Conclusion.

POINT II

THE JUDGE ABUSED HIS DISCRETION IN IMPOSING BOTH AN EXTENDED-TERM SENTENCE AND THREE CONSECUTIVE TERMS, FOR AN AGGREGATE PRISON TERM OF SIXTY YEARS, FOR OFFENSES THAT OCCURRED IN THE COURSE OF COMMITTING A SINGLE

17

ROBBERY, RESULTING IN A SENTENCE FAR IN EXCESS OF THE ORIGINAL PLEA OFFER OF A THIRTY-YEAR PRISON TERM.

There is no rule that claims of ineffective assistance must await a post-conviction relief proceeding or cannot be raised on direct appeal.[8]  See State v. Preciose, 129 N.J. 451, 459-61 (1992).  Criminal defendants are often not aware they possess a meritorious claim of ineffective assistance until well after trial and appeal, Kimmelman v. Morrison, 477 U.S. 365, 378 (1986), and our Supreme Court has termed such claims "particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding," Preciose, 129 N.J. at 460.  We commonly do not hear ineffective assistance claims on direct appeal because the claims ordinarily "involve allegations and evidence that lie outside the trial record."  State v. Castagna, 187 N.J. 293, 313 (2006) (quoting Preciose, 129 N.J. at 460).  The Court, however, has been clear an appellate court may consider claims of ineffective assistance on direct appeal "when the trial itself provides an adequately developed record upon which to evaluate [a] defendant's claims."  Ibid.; see State v. Allah, 170 N.J. 269, 285 (2002) (noting a defendant should not be required to wait until post-

---

[8]  Indeed, the Supreme Court requires that claims of ineffective assistance of counsel in termination of parental rights cases be raised on direct appeal.  See R. 2:10-6; R. 5:12-7; N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 311 (2007).

conviction relief to raise an ineffective assistance claim when the trial record discloses the facts essential to the claim); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:22-2 (2019) (If "the issue of ineffectiveness can be determined on the trial record alone, it is appropriately raised and disposed of either on a new trial motion or on direct appeal.").

Here, as the end of the first sentencing transcript makes plain, defendant became aware of his ineffective assistance claim immediately upon the court's pronouncement of sentence. Further, he presented his affidavit and the statements of his plea counsel detailing their erroneous advice to him on the motion to withdraw his plea. As was apparent from the motion papers, and underscored by designated counsel at argument, defendant's post-sentence application to the trial court was both a motion to withdraw his plea under Slater and a claim of ineffective assistance of counsel under Strickland.[9] As we have previously made clear, "[t]he two requests for relief are distinct" and "must be considered separately." State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014). Thus, under these circumstances, the trial court erred when it refused to consider defendant's claim of ineffective assistance of counsel merely because it was raised in conjunction with a motion to withdraw his plea after sentencing and not in a PCR proceeding.

---

[9] Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Moreover, applying a de novo standard of review to the denial of defendant's ineffective assistance claim, as we are bound to do here as the trial court found it not cognizable, see State v. Harris, 181 N.J. 391, 415 (2004) (noting a reviewing court owes no deference to a trial court's legal conclusions), we cannot conclude the error was an insignificant one. To succeed on a claim of ineffective assistance, a defendant must establish, first, that "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-88. When a defendant's conviction rests on a guilty plea, the focus of the prejudice prong is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In order to obtain relief, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Applying that standard here, we are satisfied defendant established a prima facie case of ineffective assistance of counsel entitling him to an evidentiary hearing. See Preciose, 129 N.J. at 462-63 (explaining a prima facie claim of ineffective assistance of counsel requires a defendant to

demonstrate a reasonable likelihood of success under <u>Strickland</u>). Defendant rejected what his lawyers represented was a plea offer from the State that would have resulted in a thirty-year NERA term because his lawyers thought thirty years excessive. Four days later, on advice of those same lawyers, defendant entered an "open plea,"[10] which exposed him to a NERA term over twice that long and to a possible extended term of life in prison.

Defendant, backed by the statements of his plea counsel, contends he made that decision, patently irrational on its face, based on their incompetent legal advice that he was not extended-term eligible and that consecutive terms were not appropriate on the facts, a view the judge endorsed in remarks he made to counsel in chambers. Defendant claims he entered his plea with the understanding he would likely be sentenced to a term of between ten to twenty years, but that his exposure was capped at thirty years, subject to NERA. Viewed in the light most favorable to defendant, <u>see</u> <u>State v. Jones</u>, 219 N.J. 298, 311 (2014), these facts established a prima facie showing of ineffective assistance of his counsel in connection with his open plea, entitling him to an evidentiary hearing on his claim.

---

[10] An "open plea" is one not including "a recommendation from the State, nor a prior indication from the court, regarding sentence." <u>State v. Kates</u>, 426 N.J. Super. 32, 42 n.4 (App. Div. 2012), <u>aff'd</u>, 216 N.J. 393 (2014).

The State, however, argues it never actually extended the offer recommending a thirty-year NERA term because defense counsel made clear it would not be accepted.  The State acknowledges it sent a letter to defendant's counsel about presenting a thirty-year term to the victim's family, but asserts "the letter was intended to tell defense counsel that if defendant made a counteroffer of thirty years, the prosecutor would discuss the offer with the victim's family."  The State contends that as defendant never counteroffered, "a thirty-year sentence . . . was thus never approved by the State as a term of any proposed plea arrangement."  The letter states in pertinent part:

> Please allow this letter to confirm our recent conference regarding the [State v. Hooper] matter. During that conference, you presented the State with a counter offer of twenty (20) years in a New Jersey State Prison.  That counter offer was respectfully rejected.  Thereafter, the undersigned has had further discussions with the family of the victim in this matter.  Based upon those discussions, the undersigned will present to the family, a counter offer which will mandate the defendant serving approximately thirty (30) years in a New Jersey State Prison.

An evidentiary hearing will permit the court to consider the testimony of all counsel to resolve that dispute of fact and determine whether a recommended thirty-year sentence was realistically available to defendant

22

before he entered his open plea.[11]    It will also provide defendant an opportunity to explain why the plea colloquy was not inconsistent with the advice his counsel provided him that an open plea was his only opportunity to get a lesser sentence than what the State was offering.  See State v. Kovack, 91 N.J. 476, 482-84 (1982).

An evidentiary hearing may also inform the court's consideration of Slater factor two, the nature and strength of defendant's reasons for wishing to withdraw his plea.  Although we see the case as primarily one of ineffective assistance, as designated counsel obviously did at argument on the motion, defendant also made a Slater motion, requiring the court to consider each separately under O'Donnell, 435 N.J. Super. at 368.

In that context, we are not convinced plea counsel's statements to defendant about whether he was eligible for extended-term sentencing and his exposure to consecutive sentences, if credible, constituted a "prediction" based on counsel's "experience and instinct," which will not support withdrawal of a guilty plea, as was counsel's prediction about the likelihood of a death

---

[11]  We are not convinced the State's actual extension of a thirty-year offer is a critical factor here in light of the statements by defense counsel that they understood a thirty-year NERA term to be the State's final offer and based their advice to defendant on that understanding.  If, however, that offer was not realistically available, the court must consider the fact in assessing whether defendant was prejudiced by his counsel's advice.  See Strickland, 466 U.S. at 687.

sentence in <u>State v. DiFrisco</u>, 137 N.J. 434, 455 (1994). The statements, at least as they appear in the certification by defendant and the statements of his counsel, may well be closer to the misinformation about eligibility for a death sentence provided to the defendant in <u>State v. Kiett</u>, 121 N.J. 483, 489 (1990); that is, statements based on concrete legal facts about defendant's eligibility for extended-term sentencing and exposure to consecutive terms.

On remand, the court must take testimony and consider the actual advice plea counsel gave defendant to induce him to reject a recommended thirty-year prison term and instead plead to the indictment, thereby exposing him to a life term, so that he might secure a more favorable sentence than the one the State was willing to recommend. The court must thereafter determine whether defendant was misinformed in entering his plea.

The trial court held that defendant's claim of ineffective assistance could be adequately addressed within the <u>Slater</u> framework. The State argues on appeal that the difference between "a motion for an evidentiary hearing [on an ineffective assistance of counsel claim] and a motion to withdraw a guilty plea is a distinction without a difference" because the ultimate relief defendant sought, to withdraw his guilty plea, is the same regardless of how he styled his motion. Both positions are legally incorrect. As we explained in <u>O'Donnell</u>, "[t]he two applications implicate different but overlapping rights." 435 N.J.

Super. at 369. A defendant's motion to withdraw a guilty plea implicates fundamental rights to liberty as well as due process. See Slater, 198 N.J. at 158 ("A core concern underlying motions to withdraw guilty pleas is to correct the injustice of depriving innocent people of their liberty."). A claim of ineffective assistance, in contrast, is grounded in the Sixth Amendment right to counsel. See Strickland, 466 U.S. at 685 ("The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.").

Ineffective assistance claims and motions to withdraw a plea are also governed by different tests and reviewed under different standards. A trial court decides a plea withdrawal motion guided by the four-factor test in Slater. State v. McDonald, 211 N.J. 4, 16 (2012). Here, because defendant made his motion after sentencing, he must show his conviction was "manifestly unjust." Slater, 198 N.J. at 156 (citing R. 3:21-1). We will thus reverse the denial of a motion to withdraw a guilty plea "only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999). By contrast, ineffective assistance of counsel claims are decided under the familiar two-prong Strickland standard, adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 60-61 (1987). Although we

defer to a trial court's factual assessment of the claims where an evidentiary hearing was conducted, State v. Nash, 212 N.J. 518, 540 (2013), in the absence of an evidentiary hearing, a reviewing court may exercise de novo review of "the factual inferences drawn from the documentary record." Harris, 181 N.J. at 421. The trial court's legal conclusions are not entitled to any deference. Id. at 415.

As we noted in O'Donnell, a defendant may be able to prevail on one of these claims but not the other. 435 N.J. Super. at 370-71. Here, defendant's lack of any colorable claim of innocence and the "manifestly unjust" standard triggered by the timing of his motion could overshadow the misinformation he received from his lawyers as a reason for withdrawing his plea, making success on a Slater motion difficult. Because defendant need not assert a colorable claim of innocence to establish ineffective assistance under Strickland, but only that a decision to have rejected a realistically available thirty-year recommended sentence in favor of an open plea "would have been rational under the circumstances," Padilla, 559 U.S. at 372, defendant's likelihood of success on his ineffective assistance claim is much higher.

Most important here, there was no good reason on the record before it for the trial court to have insisted defendant file an appeal and then a petition for PCR in order to have his ineffective assistance claim heard, instead of

hearing it along with defendant's Slater motion.  See Allah, 170 N.J. at 285.

We acknowledge that situations such as the one we confront in this case, where the record on the post-trial motion contains all the facts necessary to establish a prima facie case of ineffective assistance of counsel, are rare.  But when circumstances permit, a defendant is entitled to the court's prompt review of the claim.  Ibid.

To be clear, we do not hold the trial court judge erred by refusing to consider defendant's ineffective assistance of counsel claim as a PCR application or that the judge should have heard a PCR claim along with defendant's Slater motion.  Ineffective assistance of counsel is not a synonym for a PCR claim.  Although ineffective assistance of counsel claims are most often heard in a PCR proceeding, see Preciose, 129 N.J. at 460, conflating the two is not helpful to understanding either.  An ineffective assistance of counsel claim is simply one variety of the several claims a defendant may assert alleging "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey," one of the four grounds for relief cognizable in a PCR proceeding.  R. 3:22-2; see State v. Goodwin, 173 N.J. 583, 593 (2002).

Defendant could not file a PCR petition with his Slater motion in this case because the court rules do not permit it.  See R. 3:22-3 (noting a PCR

A-3436-16T3

petition is not "a substitute for appeal from conviction or for motion incident to the proceedings in the trial court, <u>and may not be filed while such</u> appellate review or <u>motion is pending</u>." (emphasis added)). But there was no impediment to the trial court judge considering defendant's ineffective assistance claim on defendant's post-sentence motion to withdraw his plea. <u>Cf. State v. Johnson</u>, 365 N.J. Super. 27, 30-31, 34 (App. Div. 2003) (reviewing evidentiary hearing on ineffective assistance of counsel claim on defendant's motion for new trial prior to sentencing).

A defendant simply cannot be forced to wait to bring an ineffective assistance claim in a PCR proceeding down the road when there is already "an adequately developed record upon which to evaluate defendant's claims." <u>Castagna</u>, 187 N.J. at 313. Hearing the claim while the matter remains pending in the trial court promotes judicial economy and avoids the waste of time and resources. Above all, it allows the court to expeditiously address a potential miscarriage of justice. As the United States Supreme Court has admonished, "if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts."

McMann v. Richardson, 397 U.S. 759, 771 (1970). When such matters can be addressed while the case remains pending in the trial court, they should be.

We add here that we do not expect this opinion to open "the floodgates" to evidentiary hearings on ineffective assistance claims on plea-withdrawal motions. We anticipate it will continue to be rare for defendants making such motions to muster the proofs necessary to establish a prima facie case of ineffective assistance of counsel requiring an evidentiary hearing. See Preciose, 129 N.J. at 462-63. Here, for example, that showing required the Public Defender to immediately appoint new counsel, who proffered the affidavits of plea counsel cataloging the erroneous advice they provided defendant. We do not often see prima facie claims of ineffective assistance of counsel on plea-withdrawal motions precisely because of the difficulties in establishing the necessary proofs at this stage of the proceedings. See McDonald, 211 N.J. at 29-30. This opinion should not change that. It holds only that when the record in the trial court contains the facts necessary to evaluate a defendant's claim that his counsel's ineffective assistance resulted in his guilty plea, the court must consider the claim on the plea-withdrawal motion and not defer it to a PCR proceeding.

We turn now to consider counsel's reliance on comments the trial judge allegedly made in chambers about the sentence. Although we agree with the

29                                                                    A-3436-16T3

judge that no published case imposed an obligation on him to permit defendant to withdraw his plea after the court determined it could not sentence him to the thirty-year recommended term defendant rejected in favor of an open plea, we are nevertheless concerned about the fairness of what occurred here.  Rule 3:21-1 permits a court to allow a defendant to withdraw his guilty plea after sentencing in order to correct a "manifest injustice."  The Supreme Court has made clear "[t]hat discretionary determination necessitates a weighing of 'the policy considerations which favor the finality of judicial procedures against those which dictate that no man be deprived of his liberty except upon conviction after a fair trial or after the entry of a plea of guilty under circumstances showing that it was made truthfully, voluntarily and understandably.'"  State v. Johnson, 182 N.J. 232, 237 (2005) (quoting State v. McQuaid, 147 N.J. 464, 487 (1997)).

We are mindful, as the trial judge stated on the record during colloquy on the motion, that an off-the-record "[c]onversation is not a representation." Nevertheless, the statements a judge makes about a potential sentence, whether on the record or in chambers, matter.  Rule 3:9-3(c) is designed to permit a judge, on consent of the parties, to indicate to counsel the maximum sentence the judge would impose in the event of a guilty plea.  When the Rule is not invoked and the court is not "invited in," as it was not here, a defense attorney

30                                                                    A-3436-16T3

cannot responsibly counsel a client in reliance on a judge's comments about a potential sentence. Because defendant was not entitled to rely on the judge's comments about a potential sentence, he could not hope to enforce a conditional sentence based on the judge's remarks. The Rule should not, however, relieve a judge of the obligation to speak carefully about any potential sentence whether in chambers or on the record.

Thus, although defendant cannot compel the court to take any action based on its remarks about the sentence outside the confines of Rule 3:9-3(c), the judge should, nevertheless, consider whether counsel's reliance on those remarks, whether reasonable or not, caused them to seriously misadvise their client. If so, the judge should also consider whether fundamental fairness requires defendant be permitted to withdraw his plea under Rule 3:21-1. See State v. Ancrum, 449 N.J. Super. 526, 540 (App. Div.), certif. denied, 231 N.J. 222 (2017) (vacating guilty plea on the basis of fundamental fairness where the defendant detrimentally relied on the trial court's mistaken interpretation of sentencing law in entering his plea). We do not predict the outcome of that inquiry. A judge's ability to probe and test the parties' positions is often an essential aid to a negotiated resolution of a case. We note only that judges expect the government to "turn square corners." F.M.C. Stores Co. v. Borough

A-3436-16T3

of Morris Plains, 100 N.J. 418, 426 (1985).  We should accept nothing less in ourselves.

We conclude our discussion on this point with a final observation.  The alleged remarks by the judge that the case did not appear one to justify consecutive sentences, on which defendant's lawyers claim they relied to counsel defendant to reject a recommended thirty-year sentence and instead enter an open plea to the indictment, were made before the court viewed the video of the robbery and shooting in preparation for entering sentence.  Viewing the video after the plea, which the judge said he watched "a number of times," apparently caused him to change his mind about whether this was indeed a "robbery gone bad."  If that was the case, and the judge's view about an appropriate sentence was greatly altered by evidence beyond the facts described in defendant's allocution, defendant would be entitled to challenge the reliability of that evidence.[12]  See State v. Hupka, 203 N.J. 222, 241 (2010).  He may thus do so on remand in the event he is not permitted to withdraw his plea.

---

[12]  The State at sentencing argued defendant shot the victim while he lay on his back on the floor.  Defense counsel argued the physical evidence, most notably a bullet fragment lodged in the foyer wall, supported defendant's claim that the victim was standing when defendant shot him.

That brings us to defendant's sentence. Although we agree defendant was extended-term eligible, we also note he was twenty-nine years old at the time of these offenses and only minimally qualified based on his two prior third-degree convictions for theft from a person and drug possession. The court initially imposed four extended terms in sentencing defendant, an obvious violation of N.J.S.A. 2C:44-5(a)(2). See State v. Pennington, 154 N.J. 344, 360-61 (1998). Although the court corrected that illegality, imposing the extended term only on the armed robbery count, it never adequately explained why a sentence beyond the ordinary term for armed robbery was necessary in light of defendant's minimal prior record or its reasons for imposing consecutive, maximum terms for attempted murder, unlawful possession of a handgun and the two counts of hindering.

Further, reviewing the transcript, we are not confident the court adhered to the Supreme Court's admonition in State v. Miller, 108 N.J. 112, 122 (1987), that "factors relied on to sentence a defendant to the maximum term for each offense should not be used again to justify imposing those sentences consecutively." In sentencing defendant to an extended term on a first-degree crime and multiple maximum consecutive terms, the court failed to explain how its expressed desire to make defendant's sentence an extreme example so as to serve as a warning for others was consistent with a "focus on the fairness

of the overall sentence." Id. at 121. Accordingly, we vacate defendant's sentence and remand for resentencing, if necessary, consistent with the general policies of the Code and judicial sentencing guidelines. See State v. Ghertler, 114 N.J. 383, 390-91 (1989); Yarbough, 100 N.J. at 643-44.

In sum, we reverse the denial of defendant's motion to withdraw his plea and his claim of ineffective assistance of counsel in connection with the plea and remand for an evidentiary hearing in which the court must take testimony and consider both claims. We also vacate defendant's sentence and remand for resentencing in the event defendant is not permitted to withdraw his guilty plea.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION