**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3766-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAMMEN D. MCDUFFIE,

     Defendant-Appellant.

_____

Submitted March 9, 2021 - Decided March 30, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 12-12-1785.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant appeals from an order entered by the Law Division on March 6, 2020, which denied his petition for post-conviction relief (PCR). We affirm.

I.

Defendant was charged under Indictment No. 12-12-1785 with third-degree unlawful entry of a structure at 137 Spatz Avenue in Nutley, with the purpose to commit an offense therein, N.J.S.A. 2C:18-2 (count one); third-degree unlawful entry of a structure at 138 Spatz Avenue in Nutley, with the purpose to commit an offense therein, N.J.S.A. 2C:18-2 (count two); fourth-degree concealment or destruction of evidence with the purpose of hindering his apprehension, prosecution, conviction or punishment for conduct that would constitute a crime of the third-degree, N.J.S.A. 2C:29-3(b)(1) (count fourteen); and third-degree purposeful prevention or attempt to prevent a law enforcement officer from effecting an arrest by using or threatening to use physical force or violence against the officer or another, N.J.S.A. 2C:29-2a(3)(a) (count twenty). Co-defendant Hakeem Chance was charged with counts one and two as well as eleven other offenses.[1]

---

[1] Kenard Gowdy also was charged under the indictment with other offenses. It appears that those charges were resolved.

A-3766-19

Defendant and Chance were tried before a jury. The evidence presented at trial established the following. After he obtained a warrant, Detective James Eckert of the Bergen County Prosecutor's Office (BCPO) placed a tracking device on a BMW X6, which was registered to Chance's mother. The device records location data and transmits its position via cell phone towers, which allow the police to track the device location in real time using a laptop.

Detective Elliott Cookson of the BCPO drove the first trailing vehicle. Detective Edward Young of the Fort Lee Police Department drove the second trailing vehicle, which was also occupied by undercover officers from Hackensack and Teaneck. The officers in the three vehicles communicated with each other using portable radios. Detective Eckert tracked the BMW using the GPS data transmitted to his laptop. Days before the officers tracked the BMW, Detective Eckert checked the GPS device and confirmed its accuracy.

On the evening of July 12, 2012, the GPS device indicated that the BMW was located in the parking lot of the Hilton Hotel in Hasbrouck Heights. At around 7:00 p.m., Detective Young observed Chance leave the Hilton, remove a piece of black clothing from the trunk, and enter the car. Using the GPS and their observations, the officers followed the BMW to Englewood, where it stopped on William Street, across from Dubois Court.

A-3766-19

At around 7:49 p.m., the BMW left Englewood and returned to the Hilton. At 8:42 p.m., the BMW was tracked back to the vicinity of Dubois Court in Englewood, where it stopped for two minutes. None of the officers observed defendant enter the BMW. At 8:44 p.m., the BMW departed and headed toward Route 4 West. Five minutes later, it stopped at a gas station. Detective Cookson saw that Chance was the driver and another male was the passenger in the car.

The police continued to track the BMW, which traveled south on the Garden State Parkway (GSP). At around 9:14 p.m., the BMW exited the GSP in the Newark/East Orange area. The BMW drove into Newark and then re-entered the GSP, heading northbound. At 9:31 p.m., the BMW exited the GSP in Nutley. The BMW drove around Nutley and at 9:40 p.m. drove down Spatz Avenue and stopped on Margaret Avenue.

At 9:51 p.m., the BMW left Margaret Avenue and drove north on East Passaic Avenue. A few minutes after 10:00 p.m., one of the officers received a call from the Nutley Police Department, reporting that an alarm had been triggered at a home on Spatz Avenue. The officers in the surveillance team were directed to stop the BMW.

The BMW stopped at the intersection of Centre Street and East Passaic Avenue. Detective Arochas activated the lights and sirens on his vehicle and

4

pulled behind the BMW on the passenger side. Detective Cookson also activated the lights and sirens on his vehicle and pulled up to the front left side of the BMW, while Detective Young positioned his vehicle behind the BMW.

The BMW accelerated and collided with Detective Cookson's vehicle. The BMW swerved again, hit Detective Arochas's vehicle, and sped away. When the BMW collided with his car, Detective Arochas saw the profile of the person in the passenger seat of the BMW. He said the passenger was a black male with a large head, who had no hair or short hair. When Detective Young attempted to drive his vehicle in front of the BMW, the BMW struck its front bumper. Detective Young saw Chance in the driver's seat and a bald black man in the passenger seat.

The BMW sped away heading north, traveling erratically and at a high rate of speed. The police vehicles followed. Eventually, while making a sharp left turn, the BMW struck a center concrete barrier. The impact punctured the BMW's front left tire, but the vehicle continued to travel on the rim, with sparks visible. The BMW could not negotiate a curve on a road in Little Falls and crashed into a stone wall.

Detective Arochas pulled alongside the stopped BMW and the passenger turned briefly and faced him. Detective Arochas was able to get a full view of

the passenger's face, which was illuminated by headlights, before the passenger turned away and fled the BMW. Defendant escaped. Chance fled the vehicle, but he was apprehended about fifty feet from the crash site. On the driver's side of the BMW, the officers recovered two iPhones traced to Chance, a mini flashlight, a black bandana, ski mask, and a sneaker. On the passenger side, the officers recovered a pair of sneakers and a cell phone.

Later, the police learned that two homes had been vandalized. The home of one owner, where the alarm had been triggered, was ransacked but nothing was stolen. The owner of the second home reported that someone had broken into the home while he was at work. He said a laptop, iPod, $400 in cash, and $14,500 in jewelry were missing. None of the reported stolen property was recovered or found along the chase route.

In an unrelated investigation, another officer provided a tip to Detective Arochas, which he had received from a credible confidential informant, that defendant was involved in the burglaries. Detective Arochas determined that defendant lived on DuBois Court in Englewood, the same area where the BMW stopped before proceeding to Spatz Avenue in Nutley. Detective Arochas searched the motor vehicle records and found defendant's photo. He recognized

A-3766-19

defendant as the passenger he saw in the BMW. The police obtained a warrant and arrested defendant.

The jury found defendant guilty on the burglary charges in counts one and two. The jury also found defendant not guilty of hindering apprehension and resisting arrest as charged in counts fourteen and twenty, but guilty of the lesser-included offense of resisting arrest, a disorderly persons offense under N.J.S.A. 2C:29-2.

Chance was convicted on the burglary charges in counts one and two, three counts of second-degree eluding/failure to stop, N.J.S.A. 2C:29-2(b), and eight counts of fourth-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1(b)(5)(a). Defendant filed a motion for a new trial, which the trial judge denied.

On count one, the judge sentenced defendant to a five-year prison term, with two and one-half years of parole ineligibility. On count two, the judge sentenced defendant to an extended term of ten years of incarceration, with a five-year period of parole ineligibility, to be served consecutive to the sentence imposed on count one. On the disorderly persons offense, the judge imposed a term of six months to be served consecutive to the sentences imposed under

7

counts one and two. In addition, defendant was ordered to pay restitution in the amount of $17,253.

Defendant and Chance appealed from the judgment of conviction (JOC) dated July 29, 2014. We affirmed defendants' convictions but reversed the sentences imposed and remanded the matter to the trial court to set forth reasons for the application of aggravating and mitigating factors, the basis for rejecting argued mitigating factors, and for the imposition of consecutive sentences. State v. McDuffie, 450 N.J. Super. 554 (App. Div. 2017). The Supreme Court thereafter denied defendant's petition for certification. State v. McDuffie, 232 N.J. 72 (2018). On remand, Judge Margaret M. Foti imposed the same sentence and filed an amended JOC dated January 26, 2018.

## II.

On February 23, 2018, defendant filed a pro se petition for PCR. The court assigned counsel to represent defendant, and counsel filed an amended verified petition for PCR in which he alleged he was denied the effective assistance of trial and appellate counsel.

Defendant claimed his trial attorney failed to accurately advise him concerning his sentencing exposure. He claimed his attorney told him he faced a maximum term of ten years of imprisonment, and he was later sentenced to an

aggregate term of fifteen years. Defendant alleged that if he been advised accurately of his sentencing exposure, he would have accepted the State's plea offer. Defendant also claimed he was never consulted regarding an appeal from the resentencing. He alleged he was never advised he could appeal and challenge the resentence, even though there were non-frivolous grounds for such an appeal. He asserted that, as a result, an appeal was not filed.

Judge Christopher R. Kazlau heard oral argument and found an evidentiary hearing was required to determine if the court had conducted a pretrial conference and whether defendant was informed of the State's plea offer and his maximum sentencing exposure. Defendant and his trial attorney Frank Carbonetti testified at the hearing.

Thereafter, Judge Kazlau filed a written opinion in which he denied defendant's petition in its entirety. The judge found defendant did not present specific evidence showing that his attorney failed to advise him of his right to appeal the sentence imposed on remand. The judge noted that defendant was "knowledgeable of his right to appeal" because he had previously "entered the appellate arena" when he appealed his first sentence. The judge also noted that at the conclusion of defendant's resentencing proceeding, Judge Foti had informed him of his right to appeal the sentence and conviction imposed. The

9

judge found that instead of appealing the sentence, defendant chose to file a PCR petition.

Judge Kazlau further found that while there was no record that a formal pretrial conference had been conducted, Carbonetti had informed defendant of the State's plea offer, his sentencing exposure, and the potential risks of going to trial, in accordance with Rule 3:9-1(f). The judge noted that although the State had not provided the defense with a written plea offer, Carbonetti had testified that he recalled an informal offer with a sentence of eight years of incarceration, and four years of parole ineligibility.

The judge observed that the State's plea offer had been conveyed in open court at a pretrial status conference and, during that proceeding, the assistant prosecutor stated that defendant was eligible for an extended term sentence. Moreover, Carbonetti had testified that he conveyed the State's plea offer to defendant, and he advised defendant of his maximum sentencing exposure as well as the risks of going to trial.

Carbonetti stated that he advised defendant he was eligible for an extended term. He also advised defendant the judge could sentence him to consecutive sentences for the two burglaries, and he explained the factors the judge would consider in determining whether to impose consecutive sentences.

 A-3766-19

Carbonetti also testified that he never told defendant his "total sentence" would be ten years of incarceration, with five years of parole ineligibility. In addition, Carbonetti said he informed defendant the sentencing judge "was very harsh in sentencing" and there was a good chance the judge would impose the maximum sentence.

Judge Kazlau noted that defendant had testified he had not been aware of his maximum sentencing exposure, and that he claimed he would not have gone to trial if he knew there was a possibility he could be sentenced to a fifteen-year prison term, with seven and one-half years of parole ineligibility. The judge stated, however, that Carbonetti's testimony "directly" contradicted defendant's assertions.

The judge found Carbonetti's testimony was credible and defendant's testimony was not. The judge stated it was not believable that Carbonetti, who had provided effective representation to defendant during all phases of the proceedings and who had extensive experience as a criminal defense lawyer, would not have discussed the possibility of defendant's conviction on two of the four charges, and his related sentencing exposure.

A-3766-19

The judge memorialized his findings in an order dated March 6, 2020, which denied defendant's PCR petition. This appeal followed. On appeal, defendant argues:

> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE BY MISINFORMING HIM AS TO HIS MAXIMUM PENAL EXPOSURE IF HE HAD PLEADED GUILTY; IN THE ALTERNATIVE, DEFENDANT'S SENTENCE MUST BE MODIFIED DUE TO TRIAL COUNSEL'S INEFFECTIVENESS OR DEFENDANT SHOULD BE ALLOWED TO APPEAL HIS RESENTENCING.

III.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under that test, "a defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Hooper, 459 N.J. Super. 157, 176 (App. Div. 2019) (quoting Strickland, 466 U.S. at 687-88). There is a "strong" presumption that counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

12

<u>Strickland</u>, 466 U.S. at 690; <u>see also</u> <u>Fritz</u>, 105 N.J. at 52 (describing the presumption of adequate assistance as "extreme deference").

Where, as here, the PCR court conducts an evidentiary hearing on a PCR petition, "we necessarily defer to the trial court's factual findings." <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 373 (App. Div. 2014) (citing <u>State v. Nash</u>, 212 N.J. 518, 540 (2013)). We defer to the trial court's findings "which are substantially influenced by [the trial court's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" <u>State v. Alessi</u>, 240 N.J. 501, 517 (2020) (quoting <u>State v. Elders</u>, 192 N.J. 224, 244 (2007)).

The findings by the PCR court "should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" <u>Ibid.</u> (citing <u>Elders</u>, 192 N.J. at 244). However, "we are not bound by and give no deference to the legal conclusions of the PCR court." <u>State v. Harris</u>, 181 N.J. 391, 415 (2004) (citing <u>Toll Bros., Inc. v. Twp. of W. Windsor</u>, 173 N.J. 502, 549 (2002)).

On appeal, defendant concedes Carbonetti informed him of the possibility the judge would sentence him to an extended term and impose consecutive terms. He asserts that his attorney never advised him regarding his maximum

penal exposure. He contends Carbonetti's testimony at the evidentiary hearing was "marred" by "double-talk." He asserts that if he had known his possible maximum penal exposure was fifteen years of incarceration, he would have accepted the State's plea offer, which called for an eight-year prison term with four-years of parole ineligibility.

We are convinced, however, that the record supports Judge Kazlau's finding that defendant was not denied the effective assistance of counsel regarding the State's plea offer and his maximum sentencing exposure. As noted, the judge found that defendant was aware of the State's plea offer, and Carbonetti had credibly testified that he advised defendant of his maximum sentencing exposure and the risks of proceeding to trial. The judge further found defendant's testimony that his attorney did not advise him concerning his maximum sentence exposure was not credible. The record supports the judge's findings.

Defendant also argues that the PCR court erred by finding he was not denied the effective assistance of counsel because counsel did not pursue an appeal of the resentencing. In his opinion, Judge Kazlau noted that, at the evidentiary hearing, Carbonetti indicated that he thought defendant could have raised a viable argument to challenge the imposition of consecutive sentences

14

for the two burglaries. Carbonetti had testified, however, that he "never had a chance to discuss" an appeal of the resentencing with defendant. He said he stood in as defendant's counsel at the resentencing hearing as a favor to the Office of the Public Defender (OPD), which was representing defendant at that time.

Defendant acknowledges that he signed a "Notice of Right to Appeal" form at the conclusion of the resentencing hearing. He asserts that this form had been returned to the OPD. He claims the OPD never consulted him concerning an appeal of the resentence. He asserts that he reasonably assumed that a notice of appeal had been filed on his behalf.

There is, however, no evidence that defendant ever requested Carbonetti or the OPD to file an appeal following the resentencing hearing. Thus, there is no basis for defendant's assumption that an appeal had been filed.

Moreover, as Judge Kazlau found, defendant knew he had the right to appeal from the JOC entered after the resentencing. Indeed, as Judge Kazlau pointed out, Judge Foti told defendant he had the right to appeal the resentencing and had to file the notice of appeal within forty-five days. He also signed the "Notice of Right to Appeal" form. Defendant elected instead to file a PCR petition. The record supports the PCR court's determination that defendant had

15

not been denied the effective assistance of counsel with regard to an appeal from the resentencing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION